Hillsborough,
No. 4963.

PATRICK JOYCE

*v.*

CHICOPEE MANUFACTURING COMPANY & a.

Argued October 4, 1961.

Decided October 27, 1961.

*Broderick, Manning & Sullivan* (*Mr. Broderick* orally), for the plaintiff.

*Sulloway, Hollis, Godfrey & Soden* and *Joseph S. Ransmeier* (*Mr. Ransmeier* orally), for the defendants.

LAMPRON, J. Plaintiff contends that the Trial Court was in error when it found that "Considering all of the evidence . . . Mr. Joyce's wages of . . . $62.50 per week since April 23, 1959 correctly reflect what he has been able to earn, and that he has suffered no loss of capacity to earn as compared to his average wage before the injury."

Plaintiff admits that the test of compensable disability under RSA 281:25 is the difference between his average weekly wage

before the injury and the average weekly wage which he is able to earn thereafter with his injury in suitable work under normal employment conditions. *Desrosiers* v. *Company*, 98 N. H. 424, 427. He maintains however that his employment as a guard is not normal employment or employment "under normal employment conditions." *Id.; Peak* v. *Company*, 87 N. H. 350-352. This contention is based primarily on the evidence that friends interceded on his behalf to enable him to obtain his position as guard and that his deformed spine and hands coupled with his weakened left arm resulting from his fall at Chicopee would prevent him from being able to use force on prisoners which might be required at some time in the performance of the work of a guard.

Plaintiff testified however "We have never had to use force. I think if you use them [prisoners] half human or as a human being should be treated, regardless what they might have done, I think they will go along with you and do just as you ask." He testified further that he had been hired originally on six month probationary basis, but has since become a regular employee and knows of no reason why this employment will not be permanent. He had been so employed over 1½ years, at the time of the hearing. Plaintiff also testified that he had lost no time from his new job, that his wage scale is the same as that of all other guards and that he is giving full value of service for the wages received. He testified further that on the basis of his knowledge of the duties of the head guard, he was well qualified for that job, and he believed that if it was to become open it would be offered to him.

There was testimony from an employment counselor that plaintiff's qualifications include good form perception, good motor coordination, very good manual dexterity and ability to understand and deal well with people. He further testified that in addition to his qualifications for some type of service work such as he is presently doing, plaintiff is also qualified for certain public contact work, such as a salesman or store clerk, for supervisory work such as a store manager and also as an inspector in mechanical and electrical industries.

This witness testified that prior to injury plaintiff could engage in semi-skilled labor, such as was his job at Chicopee, but that as a result of his injury his scope of employment has been changed from semi-skilled laborer to that of a service worker. He testified further that job openings for service workers and their earning capacity are much less than those of a semi-skilled worker.

There was medical evidence that plaintiff has some permanent partial disability in his left arm which the Court found on the evidence to be fifteen per cent. The Court also found that this disability "causes him trouble if he exerts an unusual force with that arm and which would prevent him from doing prolonged heavy lifting with that arm."

Plaintiff rightfully contends that because of this injury he cannot perform the type of work he was engaged in at the time of injury. Although this is a factor to be considered by the Court in determining plaintiff's earning capacity after injury, the test of compensable disability under our statute is not the employee's ability or disability because of his injury to do his old job. *Desrosiers* v. *Company*, 98 N. H. 424, 427. It is also true that the permanent partial disability in plaintiff's shoulder has limited the range of jobs which he can perform. This is another factor to be considered by the Trial Court in arriving at the above determination but it does not as a matter of law establish loss of earning capacity after injury. *Gagne* v. *Company*, 87 N. H. 163, 166; *Dunbar Fuel Co.* v. *Cassidy*, 100 N. H. 397, 403; *Kacavisti* v. *Sprague Electric Co.*, 102 N. H. 266, 270. The plaintiff's compensation is to be determined with reference to his loss of earning capacity for the duration of the compensable period, and not over his lifetime. Nor does it necessarily follow that because plaintiff's wages are more after injury than they were before that he has not suffered a loss of earning capacity. *Desrosiers* v. *Company*, 97 N. H. 525, 530.

The test, as we have said previously, is the difference between plaintiff's average weekly wage before the injury and the average weekly wage which he is able to earn thereafter with his injury in suitable work under normal employment conditions. *Desrosiers* v. *Company*, 98 N. H. 424, 427.

The Trial Court had before it a complete picture of plaintiff's previous history; his prior physical defects; the permanent partial disability caused by his injury; the presumable permanency of his present job; his natural aptitudes which would qualify him for employment in different kinds of work and his past and present earnings. On this evidence the Court in the exercise of its judicial discretion could conclude that plaintiff's wages after injury reflected his actual earning capacity as an injured man, and that he had suffered no loss of earning capacity and was not entitled to compensation under RSA 281:25. *Peak* v. *Company*, 87 N. H. 350, 352, 353; *Desrosiers* v. *Company*, 98 N. H. 424, 427. 2 Larson, Workmen's Compensation Law, s. 57.62, p. 34.

Plaintiff maintains that the Trial Court erred when it granted defendants' request for ruling number 9 which reads as follows: "Assuming that it is a fact that as a result of the accident petitioner is no longer able to perform the duties of his former job or of certain other jobs for which he was formerly qualified, this fact is immaterial if in fact petitioner is able to earn in a new permanent employment for which he is well qualified an average weekly wage after the accident which is as great or greater than his average weekly wage before, and if the new wage fairly reflects the value in the labor market of petitioner's services."

This request was at least ambiguous. If it is to be understood to mean that the fact that as a result of the accident plaintiff is no longer able to perform the duties of his former job or of certain other jobs for which he was formerly qualified are not factors to be considered by the Trial Court in determining whether the plaintiff has suffered a loss of earning capacity as a result of his injury, it is clearly not in accordance with our decisions. *Desrosiers* v. *Company*, 97 N. H. 525, 531; *Dunbar Fuel Co.* v. *Cassidy*, 100 N. H. 397, 403; *Latour* v. *Producers Dairy*, 102 N. H. 5, 7. If it is intended to mean that if the Trial Court in the exercise of its judicial discretion finds on all the evidence that plaintiff's wages after injury reflect his true earning capacity as an injured man and they show no loss in his capacity to earn as compared with his average wage before injury, the fact that because of the accident he cannot perform his former job or certain other jobs for which he was previously qualified does not prevent such a conclusion, then the request is a correct statement of the law and the Court did not err in granting it. *Desrosiers* v. *Company*, 98 N. H. 424, 427.

We are of the opinion that the Trial Court's findings, rulings and decree taken as a whole lead to the conclusion that the Court must have interpreted defendant's request in the latter sense.

*Decree affirmed.*

All concurred.